872 F.2d 88
 13 Fed.R.Serv.3d 917, RICO Bus.Disp.Guide 7198
 MUTUAL FEDERAL SAVINGS AND LOAN ASSOCIATION, a federal
savings and loan association, Plaintiff-Appellee,
v.
RICHARDS & ASSOCIATES, INC., a Virginia corporation;
Richard J. Schultz; Constance B. Schultz,
Defendants-Appellants.
 No. 88-2618.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 7, 1989.
Decided April 10, 1989.
 
 James Clinton Turk, Jr. (Stone & Hamrick, P.C., Radford, Va., on brief), for defendants-appellants.
 Jeffrey Hugh Gray (Willcox & Savage, P.C., Norfolk, Va., on brief), for plaintiff-appellee.
 Before RUSSELL and MURNAGHAN, Circuit Judges, and STAKER, United States District Judge for the Southern District of West Virginia, Sitting by Designation.
 MURNAGHAN, Circuit Judge:
 
 
 1
 In October of 1986, Mutual Federal Savings & Loan Association ("Mutual") filed a lawsuit against Richards & Associates, Inc., et al. ("R & A"),[1] claiming breach of contract; fraud and deceit; conversion; and RICO violations. Mutual sought recovery of substantial losses resulting from its funding of mobile home loans originated by the defendants and from the defendants' subsequent activities in servicing those loans on Mutual's behalf.
 
 
 2
 In June of 1988, after repeated, largely unsuccessful efforts to obtain pertinent and adequate discovery information, the Honorable Jackson L. Kiser followed the recommendation of Magistrate Glen Conrad[2] and granted judgment by default against R & A in the amount of $8,949,140.00, plus 10.5% per annum interest from the date of the order. This appeal followed.
 
 I.
 
 3
 Mutual served its first discovery request, Interrogatories and a Request for Production, on each defendant in October of 1986. R & A untimely responded to the request on January 5, 1987. Mutual then filed its First Motion to Compel on January 20, 1987. A hearing was held on February 5, 1987, whereupon the magistrate ordered the defendants to produce their documents for inspection and copying and required that all additional discovery responses be made within thirty days from entry of the order. Some of the documents were ordered to be provided to the court for an in camera review.[3] On March 23, 1987, Magistrate Conrad ordered that R & A produce the documents to Mutual because its objections of overburdensome and confidentiality were meritless.
 
 
 4
 On June 3, 1987, Mutual filed its Third Motion to Compel.[4] It had been approximately four months and two and one-half months since the magistrate's February 5, 1987 and March 23, 1987 orders, respectively. Mutual's motion of June 3, 1987 extensively described the many omissions and inadequacies of the discovery production to date. They included: non-production of the in camera materials which the court ordered on March 23, 1987; failure to produce personal bank records of Richard J. Schultz and Constance B. Schultz for calendar years 1981 to the present; lack of complete information regarding mobile home lenders with which R & A dealt and failure to produce descriptions of the agreements (if oral) and the agreements themselves (if written); absence of complete information concerning any other litigation in which R & A was currently involved;[5] nonproduction of complete information about bank accounts, including whether they still existed or on what date they were closed; and failure to produce corporate financial books, ledgers and records which Richard Schultz stated were in the possession of his accountant, Mr. Klinger, who later testified on deposition that he did not have nor believed he ever had had possession of said corporate financial books.[6]
 
 
 5
 On June 4, 1987, Magistrate Conrad ordered R & A "to respond to all outstanding discovery requests ... as identified in plaintiff's motions filed June 3, 1987, within ten days...." Magistrate Conrad concluded his order with a warning that failure to follow it would result in an order to appear to show cause why defendants should not be held in contempt of court. R & A filed Supplemental Answers and Responses to Interrogatories and Requests for Documents on June 17, 1987, three days after the deadline set by the court. On June 19, 1987, Mutual once again filed a motion to compel discovery and to request sanctions which included attorney's fees, costs, and judgment by default.
 
 
 6
 Magistrate Conrad held another hearing on June 23, 1987, at the termination of which he ordered that R & A compensate Mutual for all reasonable attorney's fees, costs and expenses incurred in attempting to enforce the original discovery order of February 5, 1987. Magistrate Conrad also directed R & A to produce documents and answer interrogatories which remained outstanding. Finally, the court ordered the defendants to certify under oath that the discovery responses required of them were completed within the time limitations and to set forth in detail the efforts and steps they took to locate information and documents which they claimed they could not find. At the hearing, Magistrate Conrad warned Richard Schultz that he was in danger of losing the case by default.
 
 
 7
 Almost six months later, on December 18, 1987, Mutual filed its Fifth Motion to Compel requesting an order that the defendants comply with each previous order and that they be sanctioned. The court entered an order on December 22, 1987, after a hearing, concluding that R & A had not obeyed the June 23, 1987 order. R & A was ordered to produce particular documents and computer printouts and to provide specific information relating to bank accounts and case docket numbers--all items which had been included in previous orders--by January 31, 1988. Magistrate Conrad again ordered that the defendants state in detail and under oath their reasons for failure to produce any of the information and the efforts which they employed to find the information. Finally, the court specified that R & A must report the status of the production, including any obstacles or difficulties, to the court and counsel for Mutual by letter no later than January 15, 1988.
 
 
 8
 As was somewhat predictable by now, the defendants out of time filed their status of production explanations after the January 31, 1988 deadline.[7] They were unsigned by both R & A and counsel and did not have a certificate of service.[8] Although some documents[9] were attached, no detailed reasons[10] or affidavits were offered to explain the inadequacies which remained. The last sentence in the document addressed to providing answers stated that "[a]ll bank statements with reference to the request are attached hereto." But, in fact, none was attached or produced.
 
 
 9
 Mutual filed its Sixth Motion to Compel on February 16, 1988, accompanied by a Motion for Default Judgment. A hearing was held before Magistrate Conrad on February 23, 1988. The magistrate indicated that on the present record, he would recommend to the district judge that judgment by default was warranted. However, he suggested, but did not order, that defendants do certain things to put a better light on themselves. If they cooperated prior to filing his recommendation, he stated that he would use less severe language in his recommendation to Judge Kiser.
 
 
 10
 On March 1, 1988, the defendants hand delivered a letter addressed to Mutual's counsel to Magistrate Conrad and filed it with the court. The letter explained that the computer discs would be forthcoming from the U.S. Attorney's office which had possession of them for a criminal prosecution. The attachments included affidavits from each of the defendants stating that they had no bank statements because they were probably discarded or destroyed during the move from Blacksburg, Virginia to South Hill, Virginia. The affidavits further stated: 1) that they had no other written agreements with lenders in their possession, 2) that they had no documents regarding the insurance agencies with which the defendants dealt, and 3) that they had been unable to locate a computer to access the financial information on the hard discs. Accompanying the affidavits were financial statements for each defendant and a blanket authorization permitting Mutual to obtain, review and copy any and all bank records.
 
 
 11
 On March 4, 1988, Magistrate Conrad found that the facts of the discovery history as summarized in Mutual's Memorandum in Support of its Motion for Default Judgment filed on February 16, 1988, were correct and recommended to Judge Kiser that judgment by default was appropriate under the circumstances. Magistrate Conrad specifically referred to the supplemental discovery efforts of the defendants which he had received on March 1, 1988 in his recommendation. Although discovery was at the eleventh hour, "in somewhat better shape", the magistrate found that it would be wrong to ignore the continuing prejudice to Mutual. After noting specific examples, Magistrate Conrad summarized that the prejudice was due from the haphazard manner of production and the incompleteness of the discovery, as well as from the uncertainty as to the accuracy of information already provided.
 
 
 12
 Judge Kiser, without a hearing, entered judgment by default against R & A on June 6, 1988, as corrected on August 11, 1988 (to include the amount of damages). In a Memorandum Opinion filed on June 13, 1988, Judge Kiser specifically incorporated by reference the magistrate's Report and Recommendation and Mutual's letter of March 5, 1988, to the magistrate, in which Mutual pointed out how the discovery information produced on March 1, 1988 was still either deficient or inaccurate.[11]
 
 II.
 
 13
 The defendants concede that they did not timely respond to the several discovery orders of Magistrate Conrad, but insist that they eventually did respond, although those responses were found to be incomplete and often-times unsigned. The defendants also argue that their eleventh hour attempt to comply with Magistrate Conrad's suggestions from the bench during the hearing on the plaintiffs' Sixth Motion to Compel or for Default Judgment brought them into full compliance with the outstanding discovery orders and, therefore, prevented the magistrate from recommending, and the district court from entering, judgment by default. The contentions are without merit. The camel's back has been broken.
 
 
 14
 Rule 37(d) of the Federal Rules of Civil Procedure gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders. Thus, it is only for an abuse of discretion that a reviewing court may reverse the decision of the district court. National Hockey League v. Metropolitan Hockey Club Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). See generally 8 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2284 (1970 & Supp.1988). In National Hockey League, the Supreme Court also cautioned the Third Circuit, which had reversed the district court's decision to dismiss the case, against the "natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order." Id.[12]
 
 
 15
 When the sanction involved is judgment by default, the district court's "range of discretion is more narrow" because the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court. See Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 503-04 (4th Cir.1977), cert. denied, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978). As we recognized in Wilson, those competing interests require the application of a four-part test: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. Id. at 503-06.
 
 
 16
 Such an evaluation will insure that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default. Id. at 504. In such cases, not only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct. National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781; Wilson, 561 F.2d at 504.
 
 
 17
 Judge Kiser clearly applied the Wilson factors.[13] First, he specifically found that the defendants had acted in bad faith by both their noncompliance and their haphazard compliance of three very specific discovery orders entered by Magistrate Conrad. The finding is not clearly erroneous,[14] but is substantially supported by the evidence recited above which demonstrates a pattern of indifference and disrespect to the authority of the court.
 
 
 18
 Second, Judge Kiser agreed with Magistrate Conrad that Mutual suffered great prejudice as a result of the defendants' misconduct because Mutual could not prove its case, in particular its RICO claim, without the business and bank records withheld by R & A. Judge Kiser described the materiality of these documents as "essential."
 
 
 19
 Third, Judge Kiser described the noncompliance as stalling and ignoring the direct orders of the court with impunity and concluded that such misconduct must obviously be deterred.
 
 
 20
 Finally, Judge Kiser specifically considered whether alternative sanctions of a less severe nature could be effective in deterring future disrespect for the judicial system. He pointed out that Magistrate Conrad had awarded costs and attorney's fees at an earlier point in the discovery process which had little, if any, impact on the defendants.[15] Furthermore, the court had rejected other sanctions such as partial summary judgment or preclusion of certain defenses because without the essential discovery materials, the case could be more difficult to try.
 
 
 21
 It is also clear from the proceedings that Magistrate Conrad threatened the defendants with contempt and warned them that continued noncompliance could result in judgment by default. Again, even thereafter, the defendants continued to defy the authority of the court. It was only after the magistrate indicated that default judgment would be appropriate as the situation stood on February 23, 1988, that the defendants rallied and attempted to put a better foot forward. They now claim that their eleventh hour letter of March 1, 1988, with attachments, has fulfilled, or at least substantially fulfilled, the outstanding discovery orders. Therefore, they contend, entry of judgment by default amounts to punishment for their compliance. The defendants further assert that Magistrate Conrad, in effect, promised that he would not recommend judgment by default if they submitted certain items. We find no merit in these arguments.
 
 
 22
 Magistrate Conrad stated only that, as a practical matter, the defendants could improve their situation by providing the documents and information yet to be obtained under the previous orders or affidavits swearing that the information was unavailable and why.[16] If that were done, Magistrate Conrad indicated that he would use less severe language in his recommendation to Judge Kiser--not that he would eliminate the default judgment recommendation.[17] Furthermore, Judge Kiser had the complete record before him which included R & A's purported compliance and Mutual's letter of March 5, 1988 contradicting the accuracy and adequacy of the discovery offered by R & A. Therefore, the record clearly supports Judge Kiser's conclusion that judgment by default was warranted.
 
 
 23
 The Supreme Court has instructed that this most severe sanction "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781. Even though the defendants may have made efforts to comply, the attempts were lastditch and only offered when it became crystal clear that they were going to lose the case unless they did something. In the context here, the things done did not add up to an adequate "something." Entrance of default judgment against the defendants now is not punishment for their "compliance" as they would have it characterized, but an unmistakable message to them and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future. To find otherwise would be to send the opposite message that the court may be pushed, ignored and defied to the outermost limits so long as the noncomplying party has even an inadequate fallback act ready in the wings should the final curtain be falling.
 
 
 24
 As the Supreme Court articulated in National Hockey League:
 
 
 25
 the District Court was extremely patient [17 months] in its efforts to allow the respondents ample time to comply with its discovery orders. Not only did respondents fail to file their responses on time, but the responses which they ultimately did file were found by the District Court to be grossly inadequate.
 
 
 26
 National Hockey League, 427 U.S. at 642, 96 S.Ct. at 2780.
 
 
 27
 In this case, Magistrate Conrad had to tolerate approximately 13 months of subterfuge and direct defiance of his authority. It has been the defendants' practice from the very beginning to ignore outright the court's orders or to submit chaotically and defectively to them.
 
 
 28
 The facts of the case speak so clearly as to R & A's egregious misconduct that we are confident that the district court did not abuse its discretion. Its decision is
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 The other two defendants were husband and wife, Richard J. Schultz and Constance B. Schultz, the officers and directors and sole shareholders of R & A. R & A refers to the corporate defendant or to all defendants where applicable
 
 
 [2]
 On January 15, 1987, Magistrate Conrad had been assigned to handle the discovery in the case
 
 
 [3]
 The magistrate also entered a protective order for the defendants and gave them certain extensions when justified
 
 
 [4]
 The Second Motion to Compel was submitted in March of 1987 in response to R & A's delay in scheduling the document production
 
 
 [5]
 R & A had neglected to identify a lawsuit in which it was a defendant, represented by the same counsel as in this case, which Mutual accidentally discovered
 
 
 [6]
 Most of the incomplete answers to the interrogatories were untimely submitted as attachments to R & A's unsigned Supplemental Interrogatory Answers. Document production had occurred on March 19 and March 20, 1987 at Richard Schultz's barn where he stored various documents in a haphazard fashion. There was no light, heat or electricity in the barn and parts of the walls were missing. On March 14, 1987, by conference call, R & A had obtained an extension from the court to review these documents to prepare for the document production. Richard Schultz later admitted that he had not done so, however; and, therefore, he could not answer the interrogatories propounded to R & A
 
 
 [7]
 No letter was sent indicating that R & A was having difficulty with complying with the order of December 22, 1987
 
 
 [8]
 Signed copies of the Interrogatory Answers were received by Mutual on February 22, 1988
 
 
 [9]
 Two of the eleven lender agreements were provided; the available docket numbers and case status for other litigation involving R & A were provided; and some of the bank account numbers were supplied
 
 
 [10]
 R & A did explain that the corporate financial information on the computer hard discs could still not be accessed because it could not locate a particular computer necessary to print out the information. The defendants also summarily answered that they had no bank statements because they assumed that "they were thrown away some time ago." They indicated that it was cost-prohibitive to have the banks reproduce the records
 
 
 [11]
 As an example, Mutual contended that the defendants' affidavits stating that they had no bank statements because of a physical move involving the documents during which they were either discarded or destroyed could not possibly account for the fact that defendants had not produced one single bank statement subsequent to the move. Mutual asserted that this was in blatant defiance of the magistrate's outstanding discovery orders
 
 
 [12]
 In National Hockey League, the discovery abuses amounted to a seventeen-month period where "crucial interrogatories remained substantially unanswered despite numerous extensions granted at the eleventh hour" and beyond the eleventh hour even though the plaintiffs were warned of forthcoming sanctions. Id. at 640-41
 
 
 [13]
 Judge Kiser referred to McKenna v. Sovran Bank NA, 836 F.2d 546 (4th Cir.1987) (unpublished) (per curiam), in his memorandum and opinion to state the law of the Fourth Circuit with regard to the sanction of default judgment for noncompliance of discovery orders. McKenna correctly recited and applied the Wilson factors
 
 
 [14]
 See Rabb v. Amatex Corp., 769 F.2d 996, 1000 (4th Cir.1985)
 
 
 [15]
 At oral argument on March 7, 1989, it was disclosed that R & A had yet to pay the costs and attorney's fees awarded to Mutual
 
 
 [16]
 The court did not enter an order to that effect. Instead, it went through the list of unproduced discovery items and told the defendants what they needed to do to put themselves in a better light. Magistrate Conrad stated:
 At the very minimum, I am going to tell Judge Kiser that I feel that they [Mutual] are entitled to it [default judgment], but the language I use and the strength of the recommendation will depend on a large measure upon what Mr. Schultz is able to come up with between now and the time that I get ready to file it with the Court.
 
 
 [17]
 Magistrate Conrad's recommendation was, in fact, less severe than Judge Kiser found the record to suggest. Magistrate Conrad had attributed, in some part, the defendants' difficulties to a communication problem between the attorneys and the clients who lived in different states. Judge Kiser rejected that explanation as an excuse for the "year of stonewalling and footdragging" clearly supported by the evidence. Magistrate Conrad also indicated that because of the most recent efforts of the defendants' counsel, "there is some reason to believe that all the information originally sought by plaintiff could eventually be discovered." Magistrate Conrad concluded, however, that "based on the discovery history in this case ... entry of default judgment in favor of the plaintiff is fully justified."