**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EDWARD RHETT BERRY,
<u>Plaintiff-Appellant,</u>

v.

SOUTH CAROLINA DEPARTMENT OF
SOCIAL SERVICES; YORK COUNTY
DEPARTMENT OF SOCIAL SERVICES;
SARAH BERRY KOHLER; OSCAR
WHITESCARVER, a/k/a Bud; SARAH

PATTIE WHITESCARVER, a/k/a Pattie;
GLEN WALTER, a/k/a Walter, Ph.D.;
TERRY CRIMM, a/k/a Hope; HOPE
COUNSELING CENTER, a/k/a Hope;
LAURIE REED, a/k/a Reed; JOHN T.
WHEELER; BILLIE MATELAND, a/k/a
Mateland; FAMILY COURTS OF YORK
COUNTY, SOUTH CAROLINA,
<u>Defendants-Appellees.</u>

No. 95-2678

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Matthew J. Perry, Jr., Senior District Judge.
(CA-94-876-10BD)

Argued: December 2, 1996

Decided: August 25, 1997

Before WILKINSON, Chief Judge, ERVIN, Circuit Judge,
and DAVIS, United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Ervin wrote the opinion, in which Chief Judge Wilkinson and Judge Davis joined.

_____

**COUNSEL**

**ARGUED:** Leonard Thomas Bradt, L. T. BRADT, P.C., Houston, Texas, for Appellant. Andrew Frederick Lindemann, Columbia, South Carolina; Tracy Lynn Eggleston, COZEN & O'CONNOR, Columbia, South Carolina, for Appellees. **ON BRIEF:** William H. Davidson, II, Columbia, South Carolina; Allan Levin, COZEN & O'CONNOR, Columbia, South Carolina; Pope D. Johnson, III, MCCUTCHEN, BLANTON, RHODES & JOHNSON, Columbia, South Carolina; Danny C. Crowe, TURNER, PADGET, GRAHAM & LANEY, P.A., Columbia, South Carolina; John E. Peterson, HARPER, PETERSON & ROGERS, P.A., Rock Hill, South Carolina; Joel W. Collins, Jr., Eric G. Fosmire, COLLINS & LACY, Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

Rhett Berry filed a complaint with nine counts, a dozen defendants, and innumerable legal theories; all of the claims contest actions, both civil and criminal, taken by the State of South Carolina against Berry for abuse of his children. The claims against the "state defendants," state and county agencies and the Family Courts, were each dismissed, pursuant to a Fed. R. Civ. P. 12(b)(1) and 12(b)(6) motion, because they were barred by the Eleventh Amendment, federal abstention doctrine, or mootness. The claims against the private-party defendants were dismissed as a sanction, pursuant to Fed. R. Civ. P. 37 and 41(b), for Berry's repeated discovery violations and failure to

2

obey court orders. We affirm all of the district court's decisions in this case and conclude that Berry's appeal is utterly without merit.

I

Rhett Berry is the father of three minor children. In October 1991, Berry was indicted in South Carolina for felony child abuse due to allegations that he had molested at least one of his children. The South Carolina Department of Social Services, based upon the same allegations, also brought a civil action to monitor the welfare of the Berry children and address custody issues. Although the criminal indictment was dismissed early in 1992, the civil case remained active and the York County Family Courts will retain jurisdiction in the matter until the children reach the age of majority. It appears that the Family Courts have placed limitations on Berry's access to his children. It also appears from the murky record and briefs before us that Berry has been ordered to pay child support, which he has not done; that he has been ordered to seek therapy in order to get partial custody of his children, which he has not done; and that he has spent a short amount of time in jail for contempt for failure to pay child support.

Berry did not seek to appeal the civil and criminal actions against him in the South Carolina courts. Instead he brought suit in federal court against numerous people including his ex-wife, her friends, numerous counselors at private and public facilities who met with Berry's children as part of the abuse investigation, the Family Courts, and the South Carolina and York County Departments of Social Services, collectively called D.S.S. by Berry. A magistrate judge handled all pretrial issues and discovery disputes in the case and made recommendations to the district court. Berry proceeded in these actions pro se.

During the pre-trial proceedings each of the defendants served Berry with interrogatories and requests for production. Many of these requests were never answered and other answers were incomplete and very untimely. The defendants filed numerous motions to compel, which always went unanswered. The magistrate judge held a hearing on several of the motions so that he could instruct Berry personally about his obligations and the consequences of continued failure to cooperate.

3

Berry was also uncooperative during his deposition, and the magistrate judge again warned him that he had to cooperate or risk dismissal of his case. Berry alleged that the questions asked violated his attorney-client privilege; he argued this even though no attorney had filed an appearance for Berry and Berry had not yet retained counsel. The magistrate judge gave Berry one day to have his alleged counsel enter an appearance with the court and prepare to defend the deposition by telephone. The next day, at the rescheduled deposition, Berry had not entered any counsel's appearance, was still unrepresented, and continued to refuse to answer questions. He demanded that the defendants first provide him with certain discovery, even though the magistrate judge had told him that such a demand did not allow him to delay his own deposition. Berry quoted from the Wall Street Journal, Fed. R. Civ. P. 26 and the Fifth Amendment, and then walked out of the deposition.

After motions by the defendants for dismissal and numerous additional motions to compel, the magistrate judge recommended that Berry's complaint be dismissed and the district court agreed.

II

Berry joined the York County and South Carolina Departments of Social Services and the Family Courts of York County as defendants in several different counts of his complaint. The district court dismissed each one of the counts as against these "state defendants." Berry does not contest the district court's dismissal of his RICO claims, his state law claims or his requests for damages in his federal claims. On appeal he only takes issue with the district court's dismissal of his requests for injunctive relief against these agencies. However, his arguments are without merit. We hold that the dismissal of several of these claims was required by the Rooker-Feldman doctrine and the doctrine of abstention. We will briefly examine each doctrine and then examine two of Berry's causes of action in light of them. The remaining causes of action against the state agencies were properly dismissed as moot and we will examine those claims in subsection D. below.

A.

Supreme Court doctrine forbids a federal district court from sitting in appellate review over state court decisions, even when those deci-

4

sions implicate federal questions. This rule is called the Rooker-Feldman doctrine after two of the cases which articulate the principle, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

As the Supreme Court has made clear, "lower federal courts possess no power whatever to sit in direct review of state court decisions." Feldman, 460 U.S. at 483 n.16 (quoting Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs., 398 U.S. 281, 296 (1970)). A plaintiff may not seek federal district court review of or relief from a state proceeding which was essentially judicial in nature.[1] A plaintiff may instead seek recourse in the state court system and may petition the United States Supreme Court for certiorari if he or she is dissatisfied with the state courts' handling of the claim and if federal jurisdiction exists. See Feldman, 460 U.S. at 482; Anderson v. Colorado, 793 F.2d 262, 263 (10th Cir. 1986) ("Where a constitutional issue could have been reviewed on direct appeal by the state appellate courts, a litigant may not seek to reverse or modify the state court judgment by bringing a constitutional claim under 42 U.S.C. § 1983.").

The Court in Feldman, 460 U.S. at 482-84, was careful to point out that its rule does not limit lower federal court jurisdiction over challenges to general state laws and policies when those policies are themselves alleged to violate the United States Constitution. Lower federal courts are, however, precluded from second-guessing the application of those laws by state courts to individuals. Id. The Feldman Court created a rule for sorting out general constitutional challenges to state laws and regulations, over which federal district courts have power, from requests for review of specific state court judicial decisions, over which they do not. When the constitutional claims for which the petitioner seeks judicial review are "inextricably intertwined with the [state court's] decisions, in judicial proceedings," they cannot be reviewed. Feldman, 463 U.S. at 486-87. See also Guess v. Board of Medical Examiners, 967 F.2d 998, 1002 (4th Cir.

_____

[1] The Court in Feldman, 460 U.S. at 479, distinguished review of state judicial procedures, over which the lower federal courts have no jurisdiction, from review of legislative, ministerial or administrative proceedings, over which jurisdiction exists.

5

1992); Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986). As Justice Marshall has explained, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." Penzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

Rooker-Feldman principles were recently applied in a district court case factually similar to the instant one. In Duby v. Moran, 901 F. Supp. 215, 216 (S.D.W. Va. 1995), a mother brought claims under 42 U.S.C. § 1983 contesting the decision of the state Health and Human Services agency to revoke her custody of her infant son because she had failed to protect him from abuse. The district court simply held that it had no jurisdiction to review decisions made by state courts in judicial proceedings even if the state court's determination was alleged to be unconstitutional. Id. at 216.

B.

As mentioned above, Berry's claims are also governed by principles of federal court abstention. The Younger doctrine requires federal courts to decline to exercise jurisdiction to enjoin pending state court proceedings despite the presence of alleged constitutional claims. See Younger v. Harris, 401 U.S. 37 (1971). While originally the doctrine applied to injunction of state criminal proceedings, it has been expanded to require abstention from injunction of civil enforcement proceedings, child custody and welfare determinations, quasi-criminal judicial proceedings like nuisance actions, and state administrative proceedings in which important state interests are at stake. See Employers Resource Management Co., Inc. v. Shannon, 65 F.3d 1126, 1134 n.7 (4th Cir. 1995) (tracing the expansion of Younger doctrine); Carter v. Maryland Comm'n on Med. Discipline, 639 F. Supp. 542, 545 (D. Md. 1986) (same). The Younger doctrine stems from the important principles of comity and federalism and from a recognition that state courts are as capable as federal courts of deciding federal and constitutional issues. Martin Marietta Corp. v. Maryland Comm'n on Human Relations, 38 F.3d 1392, 1396 (4th Cir. 1994).

We have developed a three part test for determining when Younger abstention is appropriate. There must be (1) an ongoing state proceed-

6

ing; (2) the proceeding must implicate important state interests; and (3) the proceeding must offer an adequate opportunity for presentation of the federal and constitutional claims. See Shannon, 65 F.3d at 1134; Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 251 (4th Cir. 1993).[2] It is noteworthy that we only review a lower court's decision to abstain for abuse of discretion. See Shannon, 65 F.3d at 1134; Richmond F. & P. v. Forst, 4 F.3d at 250.

The principles of Younger were recently applied in a case similar to the instant one in which parents sued to enjoin ongoing state proceedings investigating their abuse and neglect of their daughter. Renn v. Garrison, 845 F. Supp. 1127 (E.D.N.C. 1994). The court applied our three part test and found that abstention was appropriate with respect to all of the plaintiffs' claims for injunctive relief. Id. at 1129. The Renn court found that child custody actions do implicate vital state interests and relied upon Moore v. Sims , 442 U.S. 415 (1979), which applied Younger to child custody matters. Renn, 845 F. Supp. at 1130. The Renn court further found that the state courts provided an adequate remedy for the plaintiffs and that no exception to Younger applied which required the federal courts to exercise jurisdiction. Id.

C.

When we apply the principles of Rooker-Feldman and Younger abstention to the instant case, it is clear the district court properly dismissed all claims in counts one and two of Berry's complaint. In those two counts Berry sued the state defendants for allowing psychological tests of the Berry children to be introduced as evidence at the child custody and welfare proceedings; failing to video-tape all interviews between state psychologists and young children, including the Berry children, for introduction at Family Court proceedings; limiting Berry's hearings on child support and other custody issues to fifteen

---

[2] Younger abstention is limited by certain narrowly tailored exceptions. When a state action is continued in bad faith, when it constitutes harassment, or when it could result in irreparable injury without federal intervention, abstention is inappropriate. See Moore v. Sims, 442 U.S. 415, 432-33 (1979); Renn v. Garrison, 845 F. Supp. 1127, 1130 (E.D.N.C. 1994).

minutes; ordering Berry to undergo therapy and counseling and limiting his visitation with his children until he has done so; finding him in criminal contempt of court without appointing counsel to represent him.**3**

It is clear that the district court, in ruling on the merits of any of these claims, would be impermissibly sitting in review of state court proceedings. Moreover, as the Family Courts retain jurisdiction over the Berry children until they reach the age of majority, were the district court to grant the injunctive relief requested by Berry it would plainly be violating the doctrine of abstention.

We note that, despite Berry's attempts to convince us otherwise, none of his claims in counts one and two are merely broad-based, general attacks upon state policies. Instead, Berry is clearly seeking direct review of the application of those laws and policies to himself. To the extent that Berry wanted to pursue his general attacks against D.S.S. and the Family Courts, he should have appealed any adverse decisions and treatment in the state courts. In <u>Guess v. Board of Medical Examiners</u>, 967 F.2d 998, 1002 (4th Cir. 1992), we addressed a case in which a plaintiff sought review of a state court decision but cast his claims in general constitutional terms. We held that the district court had properly declined to grant injunctive relief to the plaintiff because the issues raised by the plaintiff were inextricably intertwined with the specific adjudications already made by the state court. <u>Id.</u> at 1004. We made clear that, to the extent it was appropriate for the plaintiff to raise a general challenge to state law, he had either already done so in state court, and received an unfavorable result, which the lower federal courts could not review, or should have done so; in either case, we held that the general attacks were res judicata. <u>Id.</u>

In the instant case, we decline to review or enjoin the decisions of the South Carolina courts.

_____

**3** We assume that Berry made these claims pursuant to 42 U.S.C. § 1983, although he cites no statutory authority whatsoever.

8

D.

In Berry's third, fourth and fifth causes of action, he sues state and county D.S.S. for malicious prosecution, civil conspiracy, and deprivation of civil rights through malicious prosecution.**4** Berry's claims stem from the 1991 criminal indictment issued against Berry alleging criminal child abuse, which was dismissed in early 1992. While originally Berry sued for injunctive relief from future malicious prosecutions and damages for the past prosecution, he only appeals the decision with respect to injunctive relief as against the state defendants.

The district court dismissed these claims on the ground of mootness. The court found that, to the extent that Berry was seeking injunction of malicious prosecution, his claim was moot because the prosecution had been terminated long ago and there was no indication that it would be reopened.

We fully agree with the district court's decision to dismiss on the ground of mootness, and find that it is well supported by precedent. The Supreme Court recently reiterated that cases in which there is no longer an active controversy are moot and not suitable for review in federal court. See Arizonans for Official English v. Arizona, 117 S. Ct. 1055 (1997). "To qualify as a case fit for federal court adjudication, an actual controversy must be extant at all stages of review. . . ." Id. at 1068 (internal quotation marks and citations omitted). The Arizonans Court found moot a suit to enjoin a law requiring state employees to use only English after the sole plaintiff left state employment for the private sector. Id. at 1069. Similarly, in Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991), for instance, we found that a prisoner's request for injunctive relief from unlivable prison conditions became moot when he was transferred to another prison.

Berry argued below that his claim is still viable because he is suing on behalf of others similarly situated who may still be subjected to

_____

**4** Again, we treat these claims as if they were made pursuant to 42 U.S.C. § 1983. The private defendants were also charged in counts three, four, and five, and dismissal of all claims against those defendants will be addressed in Part III., infra.

9

state criminal actions for child abuse. However, the district court was correct to reject that argument, pointing out that Berry's suit was not a class action and therefore could only vindicate his own rights. In Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir. 1981), we addressed a prisoner's suit which had been denied class action status and was the claim of a single inmate. We first noted that the court had properly denied class action status because the plaintiff was proceeding pro se. Id.; see also Oxedine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that a pro se litigant cannot represent the rights of others in a class action). We then found that, because the single plaintiff could not sue as a "knight-errant for all prisoners," and because many of the plaintiff's claims became moot with respect to himself when the prison granted his requests for improved living conditions, those claims should be dismissed. Id . As Berry has never filed a class action suit, let alone successfully had a class certified, and as his claims with respect to himself alone are moot, it was proper for the district court to dismiss Berry's remaining counts against D.S.S.

Given this web of abstention and mootness, the district court was correct to dismiss all of the counts involving the state defendants.

III

After dismissing the claims against the state defendants, the district court dismissed all of Berry's remaining claims against the private defendants as a sanction for discovery violations and for failure to prosecute, pursuant to Fed. R. Civ. P. 37 and 41(b). Berry contests this dismissal. We must review the district court's decision to insure that it applied the correct legal standard and did not abuse its discretion in dismissing the claims against the private defendants. See Mutual Fed. Sav. and Loan Ass'n v. Richards & Assoc., Inc., 872 F.2d 88, 92 (4th Cir. 1989) (applying abuse of discretion to review of Rule 37 sanctions); Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989) (employing same standard in Rule 41 context).

Rule 37 provides that parties in civil proceedings must comply with discovery requests, court orders regarding discovery, and discovery plans, and it allows a court to issue sanctions for failure to comply. We have held that a court contemplating dismissal as a sanction for failure to comply with discovery orders must consider four factors:

10

(1) whether the non-complying party acted in bad faith; (2) the degree of prejudice suffered by the other parties as a result of the failure to comply; (3) the deterrence value of dismissal as a sanction for this sort of non-compliance; and (4) the efficacy of a less drastic sanction. Mutual Federal v. Richards, 872 F.2d at 92. Rule 41(b) allows a court to dismiss a claim for failure of the plaintiff to prosecute the claim or for the plaintiff's failure to comply with court orders regarding the litigation. The test for dismissal pursuant to Rule 41(b) is similar to that for Rule 37, and requires a judge to consider (1) the degree of the plaintiff's personal responsibility for the failures; (2) the amount of prejudice caused to the defendant; (3) the existence of a history of the plaintiff deliberately proceeding in a dilatory fashion; and (4) the availability of a less drastic sanction. See Ballard v. Carlson, 882 F.2d at 95. We have also stated that before a dismissal a court must give a plaintiff a "clear and explicit" warning of the consequences of failing to satisfy the court's conditions and orders. See Choice Hotels Int'l, Inc. v. Goodwin and Boone, 11 F.3d 469, 472 (4th Cir. 1993). Finally, we have reminded that dismissal as a sanction is an extreme remedy to be used only when a party has displayed callous disregard to its obligations or exhibited very bad faith. See Id.

When these standards are applied to Berry's case, we are convinced that the extreme sanction of dismissal was appropriate. It is without question that the district court and the magistrate judge both exhaustively reviewed the history of discovery disputes in the case before recommending and ordering dismissal. They correctly found that Berry had violated several direct orders of the court to comply with discovery requests, had missed deadlines, and that the court had directly warned Berry of the ramifications of continued delays, untimeliness, and failure to comply with court orders. The magistrate judge also pointed out that he had granted a hearing on several of the defendants' motions to compel discovery from Berry, even when those motions were facially meritorious, in order to give Berry, who was proceeding pro se, the best understanding of his responsibilities. When Berry refused to cooperate at his own deposition, the magistrate judge repeatedly warned Berry by phone that he had to answer all questions and that failure to do so would result in sanctions, including dismissal. Despite these orders, Berry continued to refuse to answer certain questions, and then walked out of his deposition.

11

Before recommending dismissal, the magistrate judge carefully outlined the prejudice, through cost and delay, incurred by the defendants as a result of Berry's failure to cooperate. Further, the magistrate judge found that none of the reasons Berry gave for his failure to cooperate excused his noncompliance and that he alone was responsible. We will not disturb the magistrate judge's assessment that Berry's numerous excuses were not persuasive. See Ballard, 882 F.2d at 96 (declining to second-guess district court's rejection of plaintiff's excuses for failure to obey a court order). Given the standards of Ballard and Mutual Federal, the district court was correct to conclude that dismissal pursuant to Rules 37 and 41(b) was an appropriate and necessary sanction in light of the circumstances of Berry's case.

Finally, the magistrate judge was certainly mindful, both in recommending dismissal and throughout the proceedings, of the fact that Berry was a pro se litigant. The magistrate judge correctly pointed out that a pro se litigant is not completely protected from sanctions simply because he or she lacks counsel. See, e.g. , Ballard, 882 F.2d at 95 (holding that dismissal was appropriate where a pro se litigant was explicitly warned about failure to comply with court order).

We are satisfied that dismissal of all of Berry's claims against the non-state defendants was appropriate.

IV

We conclude that Berry's appeal is utterly without merit. Berry's claims against the state agencies were properly dismissed on the grounds of the Rooker-Feldman doctrine, abstention, or mootness and the remaining claims were properly dismissed as a sanction for Berry's repeated discovery violations and contumacious behavior. In fact, having carefully reviewed the record and Berry's brief, we conclude that Berry's appeal is frivolous within the meaning of Federal Rule of Appellate Procedure 38. See, e.g., Brock v. Angelone, 105 F.3d 952 (4th Cir. 1997) (ordering a $500 sanction as a Rule 38 penalty for frivolous appeal). We therefore order Berry to show cause why sanctions should not be assessed against him.

AFFIRMED