**John E. STEIGERWALD, III and Worldwide Charters, LLC**

v.

**Allen W. BRADLEY, et al.**

**No. CIV.A. 99–2883.**

United States District Court,
D. Maryland.

Sept. 20, 2002.

---

See also 136 F.Supp.2d 460, 2001 WL 357306.

Louis B. Price, Baltimore, MD, Francis S. Brocato, Brocato Price and Bushel PA, Baltimore, MD, for Worldwide Charters, LLC.

Allen W. Bradley, Wethersfield, CT, pro se.

Charles S. Hirsch Robert A. Scott, Ballard Spahr Andrews and Ingersoll, Baltimore, MD, for Summit Bank, defendant.

## MEMORANDUM

BLAKE, District Judge.

This dispute arises from a transaction in which plaintiffs John E. Steigerwald, III, and Worldwide Charters, LLC ("plaintiffs") contracted to purchase an aircraft from defendants Allen W. Bradley, Bradley Flying Services, Inc., and Gibraltar Aviation, Ltd. ("Bradley" and the "Bradley corporations"). Plaintiffs sued defendants Bradley and the Bradley corporations along with Summit Bank ("Summit"), which financed the purchase. On March 28, 2001, this court granted Summit's motion for summary judgment on plaintiffs' claims and on its own counterclaims. *See* 136 F.Supp.2d 460 (D.Md.2001). In a separate Memorandum and Order, this court entered an order of default judgment for plaintiffs as to liability against defendants Bradley corporations. *See* 2001 WL 357306 (D.Md.2001). On January 28, 2002, upon receiving documentation of damages from the parties, this court entered an order awarding damages and legal fees to Summit as against plaintiffs. At the same time, this court awarded damages in favor of plaintiffs against the Bradley corporations for the diminished value of the aircraft and out-of-pocket expenses. This

court ruled, however, that the plaintiffs were not entitled to lost profits.

Now pending are the following three motions: (1) plaintiffs' motion to reconsider the court's order denying them consequential damages; (2) plaintiffs' motions for judgment by default or summary judgment as against Bradley individually; and (3) Summit's motion for certification of final judgment. For the reasons that follow, the court will grant plaintiffs' two motions, thereby completely resolving the case and rendering the third motion moot.

### I. *Plaintiffs' Motion to Reconsider the Court's Order Denying Them Consequential Damages*

As stated, this court previously ruled that plaintiffs were not entitled to lost profits. On February 7, 2002, plaintiffs moved this court pursuant to Local Rule 105.10 to reconsider that segment of the court's order denying them consequential damages. Plaintiffs seek damages in the amount of $963,282.56 for sixteen months of lost income. (Pls.' Aff. In Supp. of Pls.' Resultant Damages at Ex. B.).

The court considers that motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. As the Fourth Circuit articulated in *Small v. Hunt,* 98 F.3d 789, 797 (4th Cir.1996), "[a] court may grant relief under Rule 59(e) to 'correct manifest errors of... fact upon which the judgment is based'" (*quoting* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1, at 125 (1995)). In *Small,* the Fourth Circuit held that the district court was "authorized to make a correction" of its judgment because the moving party presented facts that contradicted the information underlying the order. 98 F.3d at 797–98. In addition, the court ruled that the moving party had a " 'legitimate justification for not presenting' " the facts prior

to the court's judgment. *Id.* at 798 (*quoting RGI, Inc. v. Unified Indus., Inc.,* 963 F.2d 658, 662 (4th Cir.1992)). Even though the facts were "not newly discovered evidence in the ordinary sense," the moving party legitimately believed it had no reason to present them earlier. 98 F.3d at 798 (*cf. Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390 (4th Cir.1994) (holding that attorney's ignorance of burdens of production pursuant to a summary judgment motion is not a "legitimate justification" for failing to present facts prior to court's order)).

In their motion to reconsider, plaintiffs explained that they did not previously submit requisite proof of lost profits because they believed such evidence would be needed only "if the Bradley Defendants challenged any aspect of the damage claims." (Pls.' Mot. to Recons. at 1–2, n. 1). Given the lack of participation in this matter by the Bradley defendants, this court finds the plaintiffs' rationale to be a legitimate justification for failing to present the facts prior to the court's order denying them consequential damages.

Section 2–715 of the Annotated Code of Maryland states that: "Consequential damages resulting from the seller's breach include [a]ny loss resulting from general or particular requirements and needs which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." Md. Code Ann., Com. Law I, § 2–715(2)(a) (2002); *see also Certain-Teed Products Corp. v. Goslee Roofing & Sheet Metal, Inc.,* 26 Md.App. 452, 339 A.2d 302, 314 (1975).

Like the moving party in *Small,* plaintiffs presented facts in their motion to reconsider that contradict the information underlying the court's earlier order denying them consequential damages. Plaintiffs submitted undisputed evidence that at

the time of contracting, Bradley and the Bradley corporations were fully aware that plaintiffs' primary purpose in acquiring the aircraft was to use it for charter service. (Pls.' Mot. to Recons., Ex. A, Steigerwald Dep. Tr. at 36–37, 70–75, 173–75, 179–81). The record also reveals that the Bradley defendants knew that the plaintiffs were relying on charter income to cover the costs of the aircraft and to pay their loan obligations to Summit. (*Id.* at 173–75; Pls.' Mot. to Recons., Ex. B). Moreover, plaintiffs presented uncontradicted evidence that Bradley provided data to the plaintiffs at the time of contracting that forecasted the potential future charter income of the aircraft. (Pls.' Mot. to Recons., Ex. A, Steigerwald Dep. Tr. at 70–71, 172–75). Accordingly, this court finds that the Bradley defendants knew or had reason to know at the time of contracting that plaintiffs would suffer lost charter income if the contract was breached.

In addition, plaintiffs offered evidence that they could not reasonably have prevented the consequential damages by cover or otherwise. Plaintiffs acquired a substantial loan to finance the purchase of the aircraft, and without the anticipated charter income, they ultimately defaulted on the loan. (Summit Mot. for Summ. J. at 27). There is no evidence, therefore, to suggest that the plaintiffs could have obtained more financing to purchase another aircraft to cover the lost charter income. (Pls' Mot. to Recons. at 7).

As such, plaintiffs' motion to reconsider the consequential damages award will be granted and the court will order the Bradley corporations to pay $963,282.56 in lost profits to plaintiffs.

## II. *Plaintiffs' Motions for Judgment by Default or Summary Judgment as against Bradley Individually*

The plaintiffs also moved this court for an entry of judgment by default, or in the alternative, for summary judgment, as against Bradley individually. (Pls.' Mot. for J. by Default or Summ. J.). Bradley has not responded to these motions.

### a. *Judgment by Default*

█ Plaintiffs contend that "Bradley's willful and bad faith refusal" to obey this court's discovery orders mandate an entry of judgment by default. (*Id.* at 1). A review of the record reveals that by June 2, 2000, Bradley had refused to provide requested discovery to plaintiffs. (Pls.' Updated Status Report, 6/16/00). Accordingly, on June 16, 2000, this court entered an order compelling Bradley to answer interrogatories and produce documents. (Order, 6/16/00). On July 14, 2000, plaintiffs advised the court that Bradley refused to answer interrogatories and failed to produce all documentation as ordered by this court. (Mot. by Pls. for Disc. Expenses). By October 10, 2000, Bradley had transmitted only a select few documents to plaintiffs, in continuing violation of the court's June 16, 2000 order. (Pls.' Letter, 10/10/00). This court, therefore, granted plaintiffs' motion for discovery expenses on March 28, 2001. 136 F.Supp.2d 460, 462 n. 1. On January 28, 2002, sanctions were set at $14,322.20 as against Bradley and the Bradley corporations. (Order, 1/28/02). To date, Bradley has not satisfied this judgment. (Pls.' Mot. for J. by Default or Summ. J. at 2).

According to Federal Rule of Civil Procedure 37(b)(2)(C), if a party "fails to obey an order to provide or permit discovery... the court in which the action is pending may... [render] a judgment by default against the disobedient party." Fed. R. Civ. Pro. 37(b)(2)(C) (2002). In *Mutual Federal Sav. and Loan Ass'n v. Richards & Associates, Inc.*, 872 F.2d 88, 92 (4th

Cir.1989), the Fourth Circuit reiterated the following four-part test for evaluating motions under Rule 37 for default judgment:

(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

With regard to the last prong, the Fourth Circuit has "encouraged trial courts initially to consider imposing sanctions less severe than default," such as awards of costs and attorneys' fees, to ensure that the noncompliant party had fair warning of a default judgment. *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 41 (4th Cir.1995).

This court finds that judgment by default as against Bradley is well justified under the Fourth Circuit test. The opinion in *Mutual Federal*, where the Fourth Circuit upheld the district's court order of default judgment against a party for discovery abuses, is instructive.

Regarding the first element, the *Mutual Federal* court agreed that the defendants acted in bad faith by "their noncompliance and their haphazard compliance" with discovery orders. 872 F.2d at 93. In the instant case, Bradley is in continuing violation of the court's June 16, 2000 and January 28, 2002 orders. Moreover, the last time Bradley contacted this court with respect to this case was December 13, 2000 (Resp. to Show Cause Req., 12/13/00). This is more than sufficient to support a finding of bad faith.

Second, in *Mutual Federal*, the court held that the plaintiff "suffered great prejudice" because it "could not prove its case" against the noncompliant party without the withheld "business and bank records." 872 F.2d at 93. Here, Bradley refused to comply with this court's discovery orders to produce, *inter alia*, the following information: (a) documentation to account for the more than one-half million dollars received by Bradley and the Bradley corporations on account of the transaction which is the subject of this litigation (Mot. by Pls. for Disc. Expenses; Pls.' Letter, 10/10/00); (b) tax returns of Bradley, Bradley's wife, and Bradley's son (*Id.*); (c) a list of assets held in the name of Bradley's wife (Mot. by Pls. for Disc. Expenses); and (d) information regarding the relationship between and among Bradley and the Bradley corporations, including the amounts and sources of bonuses, expenses reimbursements and officers' loans made to Bradley (Mot. by Pls. for Disc. Expenses; Pls.' Letter 10/10/00). The crux of plaintiffs' case is that Bradley defrauded them, personally and through the use of " 'corporate shells,' " and that he *never intended to accomplish promised future performance*. (Pls.' Mot. for J. by Default or Summ. J. at 5–8). The plaintiffs cannot prove their case without such material evidence, and hence, they suffered substantial prejudice because of Bradley's discovery abuses.

Third, this court concurs with the Fourth Circuit that such "noncompliance... stalling and ignoring the direct orders of the court with impunity... must obviously be deterred." 872 F.2d at 93.

Fourth, this court, like the district court in *Mutual Federal*, awarded discovery costs at an earlier point in the litigation, with no apparent impact on the noncompliant party. (*Id.*; Order, 1/28/02). This court finds that no less drastic sanction would be effective in deterring future behavior of this kind. In addition, no less severe sanction is possible in this case, as in *Mutual Federal*, "because without the

essential discovery materials, the case could be more difficult to try." 872 F.2d at 93.

Finally, consistent with the Fourth Circuit's opinion in *Hathcock*, this court entered two orders against Bradley for discovery abuses as preliminary deterrents. 53 F.3d at 40–41. In addition, default judgment has already been entered against the Bradley corporations, which are ostensibly owned and controlled by Bradley individually. 2001 WL 357306. This court finds, therefore, that Bradley had sufficient fair warning about the possibility of default.

Accordingly, plaintiffs' motion for judgment by default as against Bradley individually will be granted and the court will order Bradley to pay $522,606.53 to the plaintiffs.[1]

### b. *Summary Judgment*

Plaintiffs also moved, in the alternative, for summary judgment as against Bradley on claims asserted in counts I through VI of their complaint. To reiterate, Bradley did not respond to this motion. Notwithstanding the entry of default judgment against Bradley, the court also will consider plaintiffs' motion for summary judgment as to count I (fraud) of the complaint.[2]

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. Pro. 56(c) (2002). Rule 56(e) states that when an adverse party does not respond to a motion for summary judgment, as is the case here, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. Pro. 56(e) (2002). The Rule also provides that an adverse party "may not rest upon the mere allegations or denials of [its] pleading, but... must set forth specific facts showing that there is a genuine issue for trial." *Id.* Because Bradley has failed to identify any genuine issue as to any material fact, by affidavits or otherwise, and because the plaintiffs' undisputed evidence establishes their right to recovery, the plaintiffs are entitled to judgment as a matter of law on the claims asserted in count I of their complaint.

The transaction at the heart of this litigation is an aircraft swap whereby "Worldwide... transferred title to its Citation One aircraft to BFS [Bradley Flying Services] and Gibraltar. [Bradley Flying Services] and Gibraltar transferred title to a 1974 Hawker Siddley aircraft ('Hawker') to Worldwide." (Compl. at ¶ 13). In other words, the Bradley corporations, not Bradley individually, were the parties to the transaction. Any fraud perpetrated by Bradley, then, presumably occurred in his capacity as owner and officer of the Bradley corporations.

■ Plaintiffs contend that Bradley should be held personally liable for the

---

1. This court, however, denies plaintiffs' request for punitive damages because the compensatory damages and lost profits award adequately remedy their harms.

2. While plaintiffs moved for summary judgment on six counts of the complaint, their

motion only addresses the fraud count. In light of the entry of default judgment against Bradley as to the entire case, the court finds it sufficient to consider plaintiffs' motion for summary judgment as to the fraud count only.

fraud allegedly perpetrated by him in his capacity as owner and sole officer of the Bradley corporations. (Pls.' Mot. for J. by Default or Summ. J. at 14–17). In the alternative, plaintiffs suggest that this court pierce the corporate veil and hold Bradley personally liable as a shareholder of the Bradley corporations. (Pls.' Mot. for J. by Default or Summ. J. at 17–19). Because this court finds the plaintiffs' first theory of personal liability to be sufficient, it will limit its discussion to this theory.

The Court of Appeals of Maryland has consistently held that "corporate officers or agents are personally liable for those torts which they personally commit... even though performed in the name of an artificial body." *Tedrow v. Deskin*, 265 Md. 546, 290 A.2d 799, 802 (1972). To hold an officer personally liable, he must have "personally directed or actively participated or cooperated in the tort committed by the corporation." *Shipley v. Perlberg*, 140 Md.App. 257, 780 A.2d 396, 401 (2001) (*quoting Fletcher v. Havre De Grace Fireworks Co.*, 229 Md. 196, 177 A.2d 908 (1962)).

Plaintiffs assert that at all times relevant to this litigation, Steigerwald

dealt only with the individual Defendant Allen W. Bradley personally, which includes both face-to-face meetings, oral and written communications, and never in any capacity wherein Mr. Bradley identified himself or limited himself as acting only in a representative capacity for either Bradley Flying Services, Inc. and/or Gibraltar Aviation, Ltd.

(Pls.' Mot. for J. by Default or Summ. J. at 10). This contention is amply supported throughout the record. (*see e.g.*, Pls.' Mot. for J. by Default or Summ. J. at 9–11, 21 (internal citations omitted)). In fact, Bradley himself testified that "Bradley is the sole stockholder, director, President and employee of [Bradley Flying Services and Gibraltar Aviation]." (Pls.' Mot. for J. by Default or Summ. J., Ex. C, Answers of Defs. to Pls.' First Set of Interrogs. at ¶ 15). As will be demonstrated, Bradley alone made all of the allegedly false representations that are the subject of count I of the complaint. Since Bradley personally committed the alleged tort, if the plaintiffs presented a prima facie case of fraud, it would be appropriate to hold him personally liable for the tort.

In order to establish a prima facie case of fraud or deceit in Maryland, the plaintiffs must show:

(1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 665 A.2d 1038, 1047 (1995).

With respect to the first element, plaintiffs identify numerous false representations that Bradley made to them. First, Bradley represented that the Hawker aircraft was fundamentally airworthy. (Pls.' Mot. for J. by Default or Summ. J., Ex. D, Aff. of Steigerwald at ¶ 5). In reality, "the FAA grounded the Hawker as not even airworthy with citation of 149 violations." (Pls.' Mot. for J. by Default or Summ. J. at 19, n. 10). Second, Bradley informed the plaintiffs that future repairs would be made to meet the requirements for charter service (Pls.' Mot. for J. by Default or Summ. J., Ex. D, Aff. of Steigerwald at ¶ 5); and that Mr. John Rutkosky, owner of Marvel Air, Inc., would be the "absolute

best" to make the repairs (Pls.' and Counterdefs.' Resp. in Opp. to Summit Bank's Mot. for Summ. J., Ex. 1, Dep. of Steigerwald at 239). The repairs were not made, however (Pls.' Mot. for J. by Default or Summ. J., Ex. D, Aff. of Steigerwald at ¶ 5); and Rutkosky reportedly had been under investigation by the FAA for falsifying aircraft inspection forms (Pls.' and Counterdefs.' Resp. in Opp. to Summit Bank's Mot. for Summ. J., Ex. 1, Dep. of Steigerwald at 155). Third, by transacting business via the Bradley corporations, plaintiffs assert that Bradley represented to them that the corporations were viable, legitimate businesses. And yet, the Bradley corporations were undercapitalized and even Bradley himself claimed later to be unsure as to who actually owned the Bradley corporations (Pls.' Mot. for J. by Default or Summ. J., Ex. B, Sworn Statement of Bradley at 4, 13–14, 18, 21–23).

Second, plaintiffs assert that Bradley either knew the representations were false or he acted with reckless indifference to the truth. Even as of May 16, 2000, the Hawker aircraft was a "piece of junk," and plaintiffs assert that Bradley, as an owner of and dealer in aircrafts, either knew or should have known that it was unairworthy (Pls.' Mot. to Recons., Ex. A, Dep. of Steigerwald at 243; Pls.' Mot. for J. by Default or Summ. J., Ex. H, Supplemental Answers of Pls. to Bradley Flying Services, Inc.'s First Set of Interrogs. at 1–2). In addition, Bradley owned other aircrafts that were serviced by Rutkosky in the past and those purchasers were "highly critical" of his work and reputability (Pls.' and Counterdefs.' Resp. in Opp. to Summit Bank's Mot. for Summ. J., Ex. 1, Dep. of Steigerwald at 231–36). And, at about the time of the aircraft swap, Bradley had "dwindled... down" and nearly "dissolved" one of the Bradley corporations to the point that it did not even maintain a bank account (Pls.' Mot. for J. by Default or Summ. J., Ex. B, Sworn Statement of Bradley at 4, 18–23).

Third, plaintiffs allege that Bradley made the misrepresentations for the purpose of defrauding them. During the course of this litigation, Bradley has repeatedly refused to account for the more than one-half million dollars he received from the plaintiffs (*infra* at II(a)). And, significantly, Bradley told Steigerwald that "it would be fruitless to involve attorneys because Bradley Flying Services and Gibraltar had no assets." (Pls.' Mot. for J. by Default or Summ. J., Ex. D, Aff. of Steigerwald at ¶ 4).

Fourth, plaintiffs relied on all of the aforementioned representations in purchasing the aircraft and taking out a loan in excess of its value. (Compl. at ¶ 60). Moreover, plaintiffs contend that they were particularly justified in relying on Bradley and the veracity of his representations because officers of Summit Bank placed the plaintiffs in contact with Bradley. (Pls.' Mot. to Recons., Ex. A, Dep. of Steigerwald at 64–65).

Finally, plaintiffs allege that they have been damaged as a result of having relied on Bradley's representations. At the time of the commencement of this litigation, the aircraft was "salable only for salvage value and [was] not worth nearly the amount [plaintiffs] paid for it." (Compl. at ¶ 61). In addition, pursuant to the swap deal, plaintiffs lost the Citation One aircraft, which was airworthy and generated charter revenue for them. (Pls.' Mot. to Recons., Ex. A, Dep. of Steigerwald at 243).

This court finds that the foregoing allegations state a prima facie case of fraud. Since Bradley did not dispute the evidence proffered with plaintiffs' summary judgment motion, this court will grant the plaintiffs' motion with respect to count I.

### III. *Summit's Motion for Certification of Final Judgment*

Summit moved this court for certification of final judgment pursuant to Rule 54 of the Federal Rules of Civil Procedure. The court's granting of plaintiffs' two motions will completely resolve the case, thereby mooting this motion.

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. plaintiffs John E. Steigerwald, III and Worldwide Charters, LLC's motion to reconsider that segment of the court's order dated January 28, 2002 denying their request for consequential damages (Docket No. 47), filed with the court on February 7, 2002, is **GRANTED**, and plaintiffs are **awarded** the sum of $963,282.56 in lost profits (in addition to the $522,606.53 previously awarded on January 28, 2002), for a total of **$1,485,889.09** against defendants Bradley Flying Services, Inc. and Gibraltar Aviation, Ltd.;

2. plaintiffs John E. Steigerwald, III and Worldwide Charters, LLC's motion for judgment by default (Docket No. 48–1), filed with the court on April 15, 2002, is **GRANTED**, and plaintiffs are **awarded** the sum of $963,282.56 in lost profits and $522,606.53 in other compensatory damages, for a total of **$1,485,889.09** against defendant Allen W. Bradley individually;

3. plaintiffs John E. Steigerwald, III and Worldwide Charters, LLC's motion for summary judgment (Docket No. 48–2), filed with the court on April 15, 2002, is **GRANTED** as to Count I against defendant Bradley individually;

4. defendant/counterplaintiff Summit Bank's motion for certification of final judgment (Docket No. 49), filed with the court on May 14, 2002, is **DENIED** as moot;

5. copies of this Order and the accompanying Memorandum shall be sent to Bradley and counsel of record; and

6. the clerk of the court shall CLOSE this case.