**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 24-1335**

───────────

MATTHEW W. SMITH, Chapter 11 Trustee for BK RACING, LLC,

        Plaintiff – Appellee,

    v.

RONALD C. DEVINE; BRENDA S. DEVINE; RANDALL DEVINE 2010 IRREVOCABLE TRUST; CHRISTOPHER DEVINE 2010 IRREVOCABLE TRUST; BENJAMIN DEVINE 2010 IRREVOCABLE TRUST; BRC LOANS, LLC; BRC REAL ESTATE HOLDINGS, LLC; A&R FOODS, INC.; VIRGINIA RACERS GROUP, LLC; PROPERTY SERVICES, INC.; US FINANCIAL COMPANIES, LLC; DEVINE FAMILY FOUNDATION,

        Defendants – Appellants.

───────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, District Judge.  (3:23-cv-00001-FDW)

───────────

Argued:  October 29, 2024                    Decided:  January 17, 2025

───────────

Before WILKINSON and BENJAMIN, Circuit Judges, and Rossie D. ALSTON, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

───────────

Affirmed by published opinion.  Judge Alston wrote the opinion, in which Judge Wilkinson and Judge Benjamin joined.

───────────

Anthony Roelof Coppola, CHAP PETERSEN & ASSOCIATES, PLC, Fairfax, Virginia, for Appellant.  Andrew T. Houston, MOON WRIGHT & HOUSTON, PLLC, Charlotte, North Carolina, for Appellee.

ROSSIE D. ALSTON, JR., District Judge:

Appellants Ronald C. Devine; Brenda S. Devine; the Randall Devine 2010 Irrevocable Trust; the Christopher Devine 2010 Irrevocable Trust; the Benjamin Devine 2010 Irrevocable Trust; BRC Loans, LLC; BRC Real Estate Holdings, LLC; A&R Foods, Inc.; Virginia Racers Group, LLC; Property Services, Inc.; US Financial Companies, LLC; and the Devine Family Foundation (collectively "Appellants")[1] seek review of the entry of default judgment against them as a discovery sanction in an adversary proceeding initiated by Appellee Matthew W. Smith, the Trustee for Debtor BK Racing LLC ("BK Racing").

This appeal arises from a bankruptcy case and related adversary proceeding marked by Appellants' willful disregard of the Bankruptcy Code and the orders of the bankruptcy court. Despite repeated warnings and directives to comply with their discovery obligations, Appellants deployed a strategy of obstruction and delay over the course of the bankruptcy proceedings, refusing to produce requested information even after being ordered to do so on multiple occasions. The bankruptcy court ultimately entered a $31,094,099.89 default judgment as a discovery sanction against Appellants, which the district court affirmed.

For the reasons set forth below, we conclude that the entry of default judgment against Appellants was not an abuse of discretion. We therefore affirm the district court's opinion reaching the same conclusion.

---

[1] Appellants consist of a married couple, Ronald and Brenda Devine (the "Devines"), and ten wholly owned corporate entities and family trusts (the "Devine Affiliates").

2

I.

A.

BK Racing owned and operated a NASCAR Cup Series race team from 2012 to 2018. The Devines were the indirect majority owners of BK Racing through their ownership of Appellant Virginia Racers Group, LLC. Appellant Ronald Devine ran BK Racing on a day-to-day basis making most of its decisions, while his wife, Appellant Brenda Devine, was the corporate manager.

On February 15, 2018, BK Racing filed an emergency petition for relief under Chapter 11 of the United States Bankruptcy Code. Despite seeking bankruptcy protection, BK Racing, under the control and direction of the Devines, failed to file the required bankruptcy schedules. The failure to file those schedules meant that millions of dollars of pre-petition transfers to Appellants were concealed from the bankruptcy court and from creditors. An email sent by Appellant Ronald Devine to counsel for BK Racing at the time revealed that the Devines refused to disclose the pre-petition transfers made to "insiders" because they did not want to provide "the enemies anymore ammo." J.A. 354. The enemies referred to were BK Racing's creditors.

Due to BK Racing's failure to provide the required financial information, Appellee was appointed as the Chapter 11 Trustee on March 30, 2018. Despite a statutory obligation to provide BK Racing's records to the Trustee, no voluntary production was made. Instead, Appellant Ronald Devine threatened in an email to "let the lawyers fight forever" if Appellee took the creditors' side in the case. J.A. 355.

On May 1, 2019, the bankruptcy court granted Appellee's motion to conduct discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Appellee subsequently served subpoenas *duces tecum* (the "Rule 2004 Subpoenas") on the Devines and on several of the Devine Affiliates. Appellant Ronald Devine opposed the Rule 2004 Subpoenas on behalf of all Appellants through various objections and motions for protective orders, which the bankruptcy court repeatedly overruled and denied.[2] Specifically, the June 10, 2019 Order denying Appellant Ronald Devine's objections (the "Rule 2004 Discovery Order") found that Appellee's requests for financial records, tax returns, corporate records, and information related to family trusts were "relevant to the Trustee's investigation of the Debtor's financial affairs," J.A. 357, and required the subpoenaed parties to comply with the requests within ten days of the order. Despite the ten-day deadline, Appellants did not attempt to comply with the Rule 2004 Subpoenas and related Rule 2004 Discovery Order until August 9, 2019, when they produced "two and one-half banker's boxes of documents" to Appellee on behalf of all Appellants. J.A. 357. These boxes did not include many of the business and financial documents that were requested in the Rule 2004 Subpoenas and ordered to be provided by the bankruptcy court.

On December 13, 2019, Appellee proposed a liquidating Chapter 11 plan that was supported by all creditors. Only Appellant Ronald Devine took a position against the plan, which was ultimately confirmed. Under the plan, Appellee became the sole manager of

---

[2] The bankruptcy court also informed Appellant Ronald Devine that he could not represent the other parties because he is not an attorney.

BK Racing and was charged with investigating the company's financial transactions and bringing causes of action for the benefit of all creditors.

B.

On February 14, 2020, Appellee initiated the subject adversary proceeding against Appellants.  In the fifteen-count adversary complaint, Appellee sought monetary damages from Appellants based on two categories of transactions.  First, Appellee alleged that the Devines fraudulently siphoned off approximately $6.4 million from BK Racing to the Devine Affiliates and the Devines, using hundreds of transfers (the "Transfers") to conceal that the funds were ultimately for the benefit of the Devines and the Devine Affiliates. Appellee further alleged that BK Racing and the Devine Affiliates are alter egos of the Devines, because the Devines operated BK Racing and the Devine Affiliates "as extensions or mere instrumentalities of themselves [with] little to no attention [] paid to corporate formalities."   J.A. 117.   The complaint sought treble damages for this category of transactions based on Appellants' alleged violations of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*, which mandates the recovery of treble damages for violations of the Act.  *See Bhatti v. Buckland*, 328 N.C. 240, 243 (1991) ("If a violation of Chapter 75 is found, treble damages must be awarded."). Second, Appellee also alleged that the Devines caused BK Racing to guaranty existing debts owed by Appellant Ronald Devine and his other companies with an aggregate principal balance of over $11,965,000.00 (the "Ron Devine Debt Assumption Transactions").

5

Appellee also filed two additional adversary actions bringing fraudulent transfer avoidance and recovery claims against other putative "insiders" of BK Racing: *Smith v. O'Haro*, Adv. No. 20-03007, and *Smith v. DiSeveria*, Adv. No. 20-03057 (collectively with the instant adversary proceeding, the "Related Adversary Cases").[3] In the Related Adversary Cases, the parties were represented by the same attorneys who appeared in the bankruptcy proceeding and protracted discovery disputes arose in each. J.A. 352.

After pleadings were complete in the Related Adversary Cases, months of delay ensued, stemming from failed efforts to schedule a joint mediation of the cases. Appellant Ronald Devine caused the delay due to his insistence that the IRS participate in a mediation. In multiple status and scheduling hearings, the bankruptcy court expressly warned the defendants in the Related Adversary Cases, including Appellants, that further delays and noncompliance with discovery obligations in these cases could result in stricken pleadings and default judgments. The bankruptcy court also set a firm discovery deadline of September 30, 2021.

## C.

In May 2021, Appellee discovered an irrevocable self-settled spendthrift trust, the BRBRC Irrevocable Trust (the "BRBRC Trust"), which the Devines formed in August 2018 after losing control of BK Racing when Appellee was appointed as Trustee and which the Devines used to pay their personal expenses. Although the bankruptcy court's Rule

---

[3] In addition to the Related Adversary Cases referred to here, there are a number of other adversary cases associated with the bankruptcy case that Appellee filed against various parties.

2004 Discovery Order required the disclosure of any trusts, the Devines failed to disclose the existence of the BRBRC Trust. Suspecting that the Devines were using the trust to hide assets from their creditors, Appellee issued a subpoena *duces tecum* to the BRBRC Trust, requesting documents related to the trust. The Devines and the BRBRC Trust ignored that subpoena and failed to respond by the deadline.

Appellee subsequently filed a motion to hold Appellant Ronald Devine in civil contempt and to compel discovery from the BRBRC Trust in the adversary proceeding. During an evidentiary hearing on July 23, 2021, the bankruptcy court found Appellant Ronald Devine in civil contempt for his willful failure to identify and produce documents related to the BRBRC Trust. The bankruptcy court also warned Appellants once again about the potential consequences of noncompliance with discovery, stating "it's time to get serious about making discovery fully, completely and within the rules." J.A. 362.

D.

In the adversary proceeding, Appellee served the First Set of Interrogatories and Requests for Production of Documents between May 25-28, 2021. Appellants provided written responses between June 28-30, 2021. Appellant Ronald Devine signed his responses and the responses of the corporate Appellants, while Appellant Brenda Devine signed her own responses and the responses of the trust Appellants. Each of the Appellants objected to most of the discovery requests; and the responses that they did provide were generally cursory, evasive, or only partially responsive. Appellants also produced only a few documents. Despite Appellee detailing these deficiencies in a letter to Appellants and

7

giving them further opportunity to address them by August 2, 2021, Appellants failed to do so, prompting Appellee to file a motion to compel on August 25, 2021.

Following an evidentiary hearing on the motion to compel, the bankruptcy court found Appellants' responses insufficient and their objections overbroad. Accordingly, the bankruptcy court granted the motion to compel in a discovery order entered on October 12, 2021, and ordered Appellants to amend their responses and to produce all requested documents that same day.

Appellants again failed to comply with this discovery order. Some of the Appellants did not amend their responses at all, while others failed to amend specific responses as instructed. Several Appellants produced no documents, and others produced only a small number of documents that Appellee had previously provided to Appellants' counsel.[4] Thus, despite the bankruptcy court's order, Appellants continued to fail to provide adequate responses to the outstanding discovery requests.

E.

On December 22, 2021, Appellee renewed his motion to compel and filed a detailed noncompliance report describing each of Appellants' discovery failures. Given Appellants' history of nondisclosure, false statements, and obstructive conduct in both the bankruptcy and the adversary proceedings, Appellee also requested that Appellants be

---

[4] In contrast to Appellants' delay in discovery, Appellee had produced all of his discoverable material in response to Appellants' discovery requests, as they were kept in the ordinary course of business and in electronic, searchable format.

sanctioned pursuant to Rule 37(b)(2). Specifically, Appellee asked that his costs and attorneys' fees be covered, that Appellants' answers be stricken, and that default judgment be entered against Appellants pursuant to Rule 37(b)(2)(A)(iii) and (iv).

In response, Appellants argued, among other things, that they had done their best to respond to Appellee's discovery requests, that the bankruptcy estate was not harmed by any alleged noncompliance, and that default judgment was too harsh a sanction.

On August 23, 2022, after holding two evidentiary hearings on the renewed motion to compel and to impose sanctions, the bankruptcy court granted the motion.[5] In an extensive 70-page order, the bankruptcy court outlined the most significant of Appellants' numerous discovery failures: (1) "None of the Discovery Responses, Original or Amended, was Properly Verified;" (2) "The Defendants Failed to Meet the Discovery Order Deadline: Some were Late; Other Defendants Failed to File Amended Discovery Responses, as Required by the Discovery Order;" (3) "The Defendants Amended Discovery Responses to the Identified Interrogatories were Incomplete and Inadequate;" and (4) "The Defendants' Amended Document productions also failed to comply with the Discovery Order." J.A. 374–88. More specifically, several Appellants "produced virtually nothing, and those that did, largely just returned to [Appellee] documents which he had previously

---

[5] On the same day, the bankruptcy court also issued a separate order granting Appellee's motion for a protective order limiting or forbidding Appellants' discovery requests and denying Appellants' motion to compel discovery responses. *See* J.A. 348 (explaining "Defendants have argued that the Plaintiff has failed to make discovery. This is false. The Plaintiff produced all his files as kept in the ordinary course of business.").

9

given them." J.A. 383. The documents that were produced were late, confusing, mislabeled, or duplicates; and many were heavily or totally redacted.[6]

The bankruptcy court ultimately ordered Appellants' answers and defenses stricken, entered default judgment against Appellants on a joint and several bases, and taxed Appellants with Appellee's costs and attorneys' fees. The judgment entered on December 19, 2022, authorized Appellee to recover $31,094,099.89 based on the damages sought in the complaint, including the treble damages sought for the North Carolina Unfair and Deceptive Trade Practices Act claim, as well as attorneys' fees and costs. J.A. 433.

F.

On January 3, 2023, Appellants appealed to the district court the following orders of the bankruptcy court: (1) the Order Holding Ronald C. Devine in Civil Contempt, (2) the Order Granting Appellee's Motion for Protective Order and Denying Appellants' Motion to Compel, (3) the Order Granting Appellee's Renewed Motion to Compel and Imposing Sanctions (the "Order Imposing Sanctions"), and (4) the Judgment entered. The district court affirmed the bankruptcy court on all four orders in an opinion dated March 5, 2024.

The district court affirmed the bankruptcy court's Order Holding Ronald C. Devine in Civil Contempt and Order Granting Appellee's Motion for Protective Order and

---

[6] Moreover, Appellants failed to produce requested tax returns; bank account records; accounting records; corporate records; loan documents and ledgers; communications regarding inter-Appellant transfers; communications regarding BK Racing's transfers to Appellants; communications regarding alleged loans; communications regarding the Ron Devine Debt Assumption Transactions; or emails. J.A. 374–88.

10

Denying Appellants' Motion to Compel, noting that Appellants had waived those arguments because they failed to brief them on appeal.

Regarding the Order Imposing Sanctions, the district court observed that, on at least three occasions, the bankruptcy court had determined that Appellants had failed to comply with discovery obligations by not fully answering interrogatories or producing all responsive documents under their control. The district court concluded that these findings were not clearly erroneous, stating that "Appellants undoubtedly undermined the integrity of the judicial process and wasted resources of the court through their numerous failures to comply with the bankruptcy court's discovery orders." J.A. 1086–87.

To evaluate whether default judgment was a proportionate sanction for the severity of Appellants' misconduct, the district court reviewed the bankruptcy court's application of the four factors set forth in *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977) (the "*Wilson* factors"). Finding no clear error in the bankruptcy court's analysis of those factors, the district court held that the bankruptcy court did not abuse its discretion by imposing default judgment as a discovery sanction in this case. Further, addressing Appellants' argument that the bankruptcy court improperly pierced the corporate veil by imposing the judgment against Appellants on a joint and several bases, the district court found no clear error, stating that "[t]he bankruptcy court properly identified and concentrated on several of the relevant factors" in deciding to pierce the veil. J.A. 1091. Finally, the district court rejected Appellants' arguments that the judgment amount was not for a sum certain.

11

After entry of default, Appellee filed a motion in bankruptcy court asserting that the amount sought was a sum certain, and during a hearing on December 6, 2022, Appellants' counsel informed the bankruptcy court that Appellants agreed to the judgment amount. On appeal before the district court, Appellants argued for the first time that the amount was not for a sum certain and that the complaint lacked the particularity required to plead fraud under Federal Rule 9. These arguments were deemed waived as they were not raised before the bankruptcy court.

Appellants subsequently appealed the district court's order to this Court.

## II.

When reviewing the judgment of a district court sitting in review of a bankruptcy court, we apply the same standard of review as applied by the district court. *Copley v. United States*, 959 F.3d 118, 121 (4th Cir. 2020). "That is, we review the bankruptcy court's legal conclusions de novo, its factual findings for clear error, and any discretionary decisions for abuse of discretion." *Id.*

The entry of default judgment, the grant of a contempt motion, and the entry of a protective order are all discretionary decisions reviewed for abuse of discretion.[7] *Mey*, 71

---

[7] Appellants' insistence that the district court applied the wrong standard of review in reviewing the entry of default is incorrect. Appellants argue that the district court should have used a *de novo* standard, rather than an abuse of discretion standard because Appellants assert that they were challenging the misapplication of law. Appellants' Opening Br. at 24. But Appellants' framing of the issues on appeal does not change the fact that the entry of default judgment as a discovery sanction is reviewed for abuse of discretion. *Mey v. Phillips*, 71 F.4th 203, 217 (4th Cir. 2023). Appellants further assert that the district court misapplied the abuse of discretion standard by primarily determining whether the bankruptcy court's factual findings were clearly erroneous. Appellants' (Continued)

12

F.4th at 217 (reviewing imposition of default judgment for abuse of discretion); *JTH Tax, Inc. v. H&R Block Eastern Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004) (reviewing denial of contempt motion for abuse of discretion); *Fonner v. Fairfax Cnty.*, 415 F.3d 325, 330 (4th Cir. 2005) (reviewing entry of protective order for abuse of discretion). The decision to pierce the corporate veil is reviewed under a clear error standard. *In re Cnty. Green Ltd. P'ship*, 604 F.2d 289, 294 (4th Cir. 1979) (reviewing bankruptcy court's refusal to pierce corporate veil for clear error).

### III.

In their statement of the issues, Appellants contest the entry of default judgment, the order holding Appellant Ronald Devine in civil contempt, the grant of Appellee's protective order, and the piercing of the corporate veil. Appellants' Opening Br. at 2. In the body of their briefs, however, Appellants fail to substantively address the civil contempt finding or the protective order. Consequently, Appellants have waived these issues both by not raising them below and by not addressing them in their briefing before this Court. *In re Wallace & Gale Co.*, 385 F.3d 820, 835 (4th Cir. 2004) (explaining that failure to raise argument before district court results in waiver of argument on appeal "absent exceptional circumstances"); *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (stating that "[a] party waives an argument by failing to present it in its opening

---

Opening Br. at 23, 29–30. Contrary to this assertion, however, the district court correctly applied the standard because a reviewing court finds abuse of discretion where the lower court's "conclusions are based on mistaken legal principles or *clearly erroneous factual findings*." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 311 (4th Cir. 2020) (emphasis added) (citation omitted).

13

brief" on appeal); J.A. 1182 (noting that Appellants "failed to address [the contempt order] in their briefings to" the court); J.A. 1184 (affirming protective order because "Appellants raised no arguments in the briefing before this Court regarding the order").[8]

The remaining issues properly before this Court include Appellants' assertions that: (i) the default judgment was inappropriate; (ii) the amount of the default judgment was unduly severe as a matter of law; and (iii) the decision to pierce the corporate veil was erroneous. We address these arguments as they arise in review of the district court's order affirming the bankruptcy court's entry of default judgment as a discovery sanction.

A.

Courts have broad discretion to manage discovery, including the authority to impose sanctions for discovery abuses as part of their case management responsibilities. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (citing *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278–79 (4th Cir. 2005)). Given this "wide latitude in controlling discovery," a court's "rulings will not be overturned absent a showing of clear abuse of discretion." *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986). An abuse of discretion occurs when a court's "conclusions are based on

---

[8] Appellants do briefly suggest, without further explanation, that the bankruptcy court improperly made findings of fact in the civil contempt and protective orders. Appellants' Opening Br. at 24. But Appellants fail to identify which specific findings they contest in these orders. To the extent that Appellants challenge the bankruptcy court's authority to make factual findings altogether, it is well-established that a court must determine whether the elements of contempt and the standards for a protective order are met before issuing such orders. Thus, the bankruptcy court properly made necessary findings of fact in issuing those rulings.

14

mistaken legal principles or clearly erroneous factual findings." *Parkway 1046*, 961 F.3d at 311 (citations and quotations omitted). A lower "court's finding that [a party] deliberately disregarded [a] pre-trial order is a factual finding . . . that can be overturned by this [C]ourt only if clearly erroneous." *Rabb v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985). If a party "fails to obey an order to provide or permit discovery," Rule 37 of the Federal Rules of Civil Procedure authorizes a court to impose sanctions, including default judgment. Fed. R. Civ. P. 37(b)(2)(A).

Nevertheless, "[w]hen the sanction involved is judgment by default, the district court's 'range of discretion is more narrow' because the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). To balance those competing interests in determining whether default judgment is an appropriate sanction, courts must consider the *Wilson* factors: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Mey*, 71 F.4th at 217 (quoting *Richards*, 872 F.2d at 92).

On appeal, Appellants do not engage in a substantive analysis of the *Wilson* factors but instead contend that the *Wilson* factors have been superseded by the test set forth in *U.S. v. Shaffer Equip. Co.*, 11 F.3d 450, 462–63 (4th Cir. 1993). Appellants' Opening Br. at 16–20. The *Shaffer* test, however, is designed to evaluate the appropriateness of a different sanction – dismissal of a party's action. *See Shaffer*, 11 F.3d at 461 (noting that

15

the district court in that case imposed "the most severe sanction" in dismissing the government's action); *see also* Fed. R. Civ. P. 37(b)(2)(A)(v) (listing dismissal of an action or proceeding as a separate sanction from rendering default judgment against a disobedient party). Our precedent remains clear that the *Wilson* factors govern decisions on whether to impose default judgment as a sanction. *Mey*, 71 F.4th at 218 (stating that "district courts must consider the following *Wilson* factors in determining whether to sanction a party with default judgment").[9]

In its order imposing default judgment, the bankruptcy court clearly and correctly applied the *Wilson* factors and, in affirming that order, the district court found no clear error in the bankruptcy court's factual findings.[10] We also find that the bankruptcy court

---

[9] It is worth noting that analysis under the *Shaffer* factors would not compel a different result here.

[10] Appellants broadly challenge the bankruptcy court's factual findings in determining that Appellants disobeyed court orders and that default judgment was an appropriate sanction. Appellants' Opening Br. at 23 (asserting that the bankruptcy court "inexplicably made 70 pages of evidentiary findings, which at its core is incompatible with a default"). Yet, these findings were necessary to justify the imposition of discovery sanctions. When imposing default judgment as a sanction for failing to comply with a discovery order, a court must find in this context that the party disobeyed an order by not providing the required discovery. *See* Fed. R. Civ. P. 37(b)(2)(A) (providing for sanctions if a party "fails to obey an order to provide or permit discovery"). The court must then make further findings to determine whether the sanction it imposes is proportionate to the severity of the misconduct. *See In re Jemsek Clinic, P.A.*, 850 F.3d 150, 158 (4th Cir. 2017) (explaining that a court "abuses its discretion when it imposes sanctions disproportionate to the severity of a party's misconduct."). Accordingly, the bankruptcy court properly fulfilled this responsibility by issuing a comprehensive 70-page order documenting Appellants' extensive failures to comply with its directives to make discovery and determining that the four factors set forth in *Wilson* were met, thus making default judgment an appropriate sanction.

16

appropriately applied the *Wilson* factors to determine that Appellants' obstructive and bad faith conduct required the entry of default. On review, it appears that the bankruptcy court exercised an extraordinary level of patience in dealing with Appellants' efforts to bring the bankruptcy and adversary proceedings to a standstill.

First, as the bankruptcy and district courts correctly found, Appellants engaged in a "pattern of bad faith" by repeatedly failing to make discovery as required, neglecting to correct discovery deficiencies, and providing false interrogatory responses. J.A. 411. Appellant Ronald Devine's communications reveal that his refusal to engage in the discovery process on behalf of himself or any of the entities for whom he was providing responses was intentional. *See* J.A. 354 (explaining that email revealed that the Devines refused to disclose pre-petition transfers made to "insiders" because they did not want to provide "the enemies anymore ammo"). Thus, Appellants have "demonstrate[d] a continued pattern of discovery abuse that we simply cannot chalk up to inadvertence or mistake." *Mey*, 71 F.4th at 220.

Second, Appellants' dilatory tactics in refusing to comply with discovery obligations caused substantial prejudice to Appellee. Assessing whether Appellee experienced prejudice "necessarily includes an inquiry into the materiality of the evidence [Appellants] failed to produce." *Richards*, 872 F.2d at 92. As the bankruptcy court highlighted, the evidence Appellants withheld was essential to the litigation:

> The relationship between Defendants and BK Racing, the financial condition of the Debtor at the time of the Transfers, the large sums transferred to the Defendants by BK Racing and the reasons why, the considerable sums moving between the Defendants' accounts and those of Related Case defendants—all go to the heart of this action. These matters are material to

17

> whether the Transfers to these Defendants are avoidable; to whether the Devines have breached fiduciary duties owed to BK Racing's creditors; to whether the Defendants have engaged in unfair trade practices; and to whether the corporate veil should be pierced and the Defendants held liable as alter egos for the BK Racing creditor claims.

J.A. 412. By withholding such material evidence, Appellants denied Appellee the opportunity to develop an effective litigation strategy to prove his case and to have a fair trial. *See Richards*, 872 F.2d at 93 (affirming entry of default where a plaintiff "suffered great prejudice as a result of defendants' misconduct because [the plaintiff] could not prove its case . . . without the business and bank records withheld"). We agree that Appellant's failure to meaningfully participate in discovery caused significant prejudice to Appellee and, thus, find that there was no error, let alone clear error, with respect to the district court's or the bankruptcy court's analysis reaching the same conclusion.

Third, the need for deterrence is particularly strong where, as here, a party is "stalling and ignoring the direct orders of the court with impunity." *Id.* Such defiance not only undermines the opposing party's ability to seek justice but, if left unchecked, emboldens other litigants to flout the authority of the court. *Id.* at 92. As the bankruptcy court observed, Appellants' conduct in this case exemplifies the kind of misconduct that must be deterred. The Devines voluntarily placed BK Racing into bankruptcy, thereby assuming the duties and transparency obligations required under the Bankruptcy Code. Nonetheless, Appellant Ronald Devine blatantly refused to file the required schedules at the outset of the case, threatening to "let the lawyers fight forever." J.A. 355. True to this threat, Appellants have prolonged the case with repeated delays, evasiveness, and refusals to comply with discovery obligations. This conduct has forced both Appellee and the

18

bankruptcy court to expend considerable resources in pursuit of basic information. Such willful obstruction of the judicial process cannot and will not be tolerated. The bankruptcy court's finding of a need for deterrence in this instance was thus not clearly erroneous.

Finally, the bankruptcy court considered the effectiveness of less drastic sanctions and concluded that, "in this most egregious case," resolving the dispute on the merits "is not possible." J.A. 414. We agree. "[E]ntry of a default judgment was warranted both as a deterrent and as a last-resort sanction following the [Appellants'] continued disregard of prior warnings." *Anderson v. Found. for Advancement*, 155 F.3d 500, 505 (4th Cir. 1998). Here, the bankruptcy court issued multiple explicit warnings regarding the consequences of Appellants' refusal to engage in discovery, ordering them "on three separate occasions to make discovery as to these matters." J.A. 415. Despite these warnings, Appellants continued to disregard court orders and obstruct discovery efforts. Appellant Ronald Devine, in particular, was held in civil contempt for failing to make Rule 2004 discovery. Yet neither he nor the other Appellants took any corrective action. Given this continued defiance, the bankruptcy court rightly determined that lesser sanctions were futile here. The bankruptcy court had already issued multiple orders to compel discovery, all of which were ignored. Monetary sanctions were also deemed futile due to the employment status of the Devines, the $3.5 million of unpaid judgments and federal tax liens already imposed, and the corporate Appellants' lack of assets. Moreover, a sanction which precluded Appellants from presenting certain evidence not produced in discovery would similarly not address the harm caused, because the burden of proof in the adversary proceeding rested with Appellee, who required discovery to be able to meet his burden. Thus, the only

19

sanction sufficient to address Appellants' egregious conduct was the entry of default. The district court therefore correctly found no clear error in the bankruptcy court's conclusion that lesser sanctions would be ineffective.

Accordingly, upon a review of the record, the district court correctly found that the bankruptcy court did not abuse its discretion in imposing default judgment.

### B.

Nevertheless, Appellants contend that the district court erred in upholding the amount of the $31 million judgment, claiming that it is "too large" and "unduly severe" as a matter of law because it awards Appellee "far more than the total liability of the bankruptcy estate." Appellants' Opening Br. at 10, 14. To support their position, Appellants rely on *In re Jemsek Clinic, P.A.*, 850 F.3d 150 (4th Cir. 2017). Their reliance, however, is misplaced.

In *Jemsek*, we held that the bankruptcy court's dismissal of the case with prejudice and award of $1.29 million in attorneys' fees and costs was an excessive sanction under the specific circumstances there. *Id.* The *Jemsek* decision, however, was not based on the sheer size or magnitude of the sanction as Appellants suggest. Rather, this Court found the sanction "unduly severe" because "we [did] not think [the plaintiff's] conduct called for the most extreme sanction available." *Id.* at 158. The bankruptcy court in *Jemsek* sanctioned the plaintiff for failing to disclose a settlement in a separate class action lawsuit against the plaintiff. The settlement included an injunction barring putative class members, which included the defendant, from filing several of the counterclaims that the defendant had brought against the plaintiff in *Jemsek*. Although the defendant had received notice of

20

the settlement, he failed to notify his counsel and to timely opt out of the settlement to preserve his counterclaims against the plaintiff. After the deadline to opt out passed, the plaintiff moved to enforce the injunction against the defendant in *Jemsek*, causing the defendant to withdraw seven counterclaims. The bankruptcy court eventually sanctioned the plaintiff for not disclosing the settlement sooner by dismissing the plaintiff's claims with prejudice and awarding the defendant with attorneys' fees and costs. On appeal, this Court concluded that the bankruptcy court's sanction was unwarranted. Although the plaintiff may have acted in bad faith, it was the defendant's own inaction that primarily caused the loss of his counterclaims. Thus, the plaintiff's conduct did not justify such a severe sanction because the defendant was to blame for the loss of his counterclaims. *Id.* at 159. Additionally, we found that there was "no reason why a lesser sanction could not adequately compensate for any actual harm . . . caused and deter similar misconduct in the future." *Id.*

In contrast, the circumstances here are markedly different. As discussed *supra*, the *Wilson* factors unequivocally support the imposition of default judgment. Unlike the plaintiff's conduct in *Jemsek*, Appellants' egregious behavior undoubtedly caused years of delay in this case, wasting the time and resources of both Appellee and the bankruptcy court and demonstrating a clear disregard for the judicial process. The repeated failure to comply with discovery obligations, defiance of court orders, and deliberate obstruction have caused significant prejudice to Appellee and have threatened the integrity of the judicial system. Further unlike *Jemsek*, where a lesser sanction could have sufficed,

21

Appellants' persistent disregard for the bankruptcy court's authority left no viable alternative to the default judgment imposed.

Finally, where default judgment is warranted, if a plaintiff's claim is for a "sum certain or a sum that can be made certain by computation," then a judgment "must [be] enter[ed] . . . for that amount and costs against a defendant who has been defaulted." Fed. R. Civ. P. 55(b)(1).  In the judgment, the bankruptcy court concluded that the damages sought in the adversary complaint were for a sum certain – $31,094,099.89.  J.A. 433.  In the complaint, Appellee sought monetary damages from Appellants based on two categories of transactions: the Transfers (approximately $6.4 million in damages – trebled under North Carolina law) and the Ron Devine Debt Assumption Transactions ($11,965,000.00 in damages).  Together, these two categories of transactions support the entry of a $31 million default judgment.  The judgment amount was therefore not too large or unduly severe as a matter of law.[11]

## C.

Appellants also assert that the lower courts erred by piercing the corporate veil. Appellants' Opening Br. at 34–38.  Specifically, they contend that the bankruptcy court improperly treated the Appellants as a single entity, holding them jointly and severally liable for the default amount without conducting a proper veil piercing analysis. *Id.*  They

---

[11] We have previously upheld the imposition of sizeable default judgment amounts in similar circumstances.  *See, e.g.*, *Richards*, 872 F.2d at 94 (upholding $8,949,140.00 default judgment entered as sanction for failure to make discovery).

22

further argue that the district court improperly performed the veil piercing analysis that the bankruptcy court did not. *Id.*

Although the decision to pierce the corporate veil and hold an entity or individual liable for the acts of a separate, though related, entity "must be taken reluctantly and cautiously, courts will not hesitate to take such action when justice so requires." *Keffer v. H.K. Porter Co.*, 872 F.2d 60, 64 (4th Cir. 1989). The decision to pierce the veil "depends largely on the resolution of questions of fact," and should not be "reversed unless it was clearly erroneous." *In re Cnty. Green Ltd. P'ship*, 604 F.2d at 292. "A finding is clearly erroneous when, although there is evidence to support it, on the entire evidence the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Everett v. Pitt Cnty. Bd. of Educ.*, 788 F.3d 132, 145 (4th Cir. 2015) (quoting *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 317–18 (4th Cir. 2001). On the other hand, a finding must be upheld if it "rests on a permissible view of the evidence, even if we might have ruled differently had we been sitting as the trier of fact." *Everett*, 788 F.3d at 145 (citations and internal quotations omitted). Here, the district court concluded that the bankruptcy court's findings in support of the decision to pierce the corporate veil were not clearly erroneous. J.A. 1092. We agree.

Whether to pierce the corporate veil is a matter of state law. *Sky Cable, LLC v. DirecTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018). When a "corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities . . . the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person." *Henderson v. Sec. Mortg. & Fin. Co.*,

23

273 N.C. 253, 260 (1968).  Among the factors to be considered in determining the propriety of piercing the corporate veil are: (1) gross undercapitalization of the subservient corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of the corporation's funds by the dominant corporation; (5) non-functioning of officers and directors; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operation of the dominant stockholder or stockholders.  *DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685–87 (4th Cir. 1976).

Many of these factors are present in the instant case and, as the district court noted, "the bankruptcy court properly identified and concentrated on several of the relevant factors in finding 'the twelve are but a married couple (the Devines), their six wholly owned corporate entities and four family trusts.'"  J.A. 1091 (quoting J.A. 371).

> The bankruptcy court explained the corporate entities are defunct, lack employees or operations, and possess no material assets. ([J.A. 371]) In fact, the Bankruptcy Court noted some of the corporations had never had any employees or operations serving, rather, as 'holding companies for specific Ron Devine business ventures or specified assets.' (*Id.*)  The Bankruptcy Court determined the Devines—as the signatories or controllers of the corporate bank accounts and as the officers, director, trustees, or owners of the corporations[12] — caused the corporate Appellants to pay expenses and debts of other corporate Appellants as well as pay the personal expenses of the Devines from the corporate accounts.  (*Id.*)  Similarly, the corporate Appellants guarantied the debts of the Devines and other insiders and pledged assets to secure loans for the Devines or other corporate Appellants.  (*Id.*)  As further incompliance with corporate formalities, the bankruptcy court also noted Appellants' failure to keep accurate and complete corporate records, financial records, and shareholder minutes, including records of

---

[12] "In fact, the corporate Appellants 'either had no other officers, directors or trustees or no properly functioning officers, directors, or trustees to oversee the Devines' actions.'"  J.A. 1091 (quoting J.A. 372).

24

substantial amounts of money transferred between the individual and corporate Appellants. ([J.A. 372]).

J.A. 1091–92.[13]

Upon review of the record, we agree that the decision to pierce the corporate veil and enter default judgment against Appellants on a joint and several bases was not clearly erroneous. "This case patently presents a blending of the very factors which courts have regarded as justifying a disregard of the corporate entity in furtherance of basic and fundamental fairness." *DeWitt Truck Brokers*, 540 F.2d at 689. Although the bankruptcy court did not explicitly conduct a veil piercing analysis, the district court correctly observed that "the bankruptcy court properly identified and concentrated on several of the relevant [veil piercing] factors," J.A. 1091, when it concluded that "[i]n practical reality, the Defendants are simply the Devines," J.A. 371. Furthermore, the bankruptcy court's Order Imposing Sanctions thoroughly detailed the discovery failures of each of the Appellants at length, demonstrating that each was deserving of the entry of default. J.A. 373–95. Accordingly, the decision to pierce the corporate veil was based on a permissible view of the evidence, was not clearly erroneous, and must be affirmed.

---

[13] Notably, the bankruptcy court also observed that Appellee, in the complaint, asserts that Appellants are alter egos of one another, based upon eleven factual averments that demonstrate the presence of several *Dewitt* factors. J.A. 371–72. The bankruptcy court further noted that Appellants admitted to half of these factual allegations in their answer to the complaint. J.A. 372.

25

IV.

In sum, the bankruptcy court exhibited extraordinary patience in the face of Appellants' egregious conduct.  This Court will not condone such blatant disregard for the judicial process.  Accordingly, for the forgoing reasons, the district court's order affirming the bankruptcy court's entry of default judgment against Appellants and awarding Appellee $31,094,099.89, plus costs and attorneys' fees, is

*AFFIRMED*.